# United States Court of Appeals
*for the*
# Eighth Circuit

Case No. 14-3428

JOHN FREDERICK DRYER; ELVIN LAMONT BETHEA; EDWARD ALVIN WHITE,

*Plaintiffs-Appellants,*

– v. –

NATIONAL FOOTBALL LEAGUE,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA CASE NO. 0:09-CV-02182-PAM-AJB THE HONORABLE PAUL A. MAGNUSON, DISTRICT JUDGE

**BRIEF OF *AMICI CURIAE* MAJOR LEAGUE BASEBALL PROPERTIES, INC. AND NATIONAL HOCKEY LEAGUE IN SUPPORT OF DEFENDANT-APPELLEE**

ANTHONY J. DREYER
JORDAN A. FEIRMAN *(of counsel)*
ANDREW L. GREEN *(of counsel)*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Amici Curiae*

Appellate Case: 14-3428    Page: 1    Date Filed: 03/18/2015 Entry ID: 4255978

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amici Curiae* represent as follows:

The parent corporation of Major League Baseball Properties, Inc. ("MLBP") is Major League Baseball Enterprises, Inc. No publicly held company owns 10% or more of stock in MLBP.

The National Hockey League ("NHL") has no parent corporation and no publicly held company owns 10% or more of stock in the NHL.

## TABLE OF CONTENTS

Page

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ....................................... i

TABLE OF AUTHORITIES ................................................................................ iii

IDENTITY AND INTERESTS OF AMICI CURIAE ............................................... 1

ARGUMENT .......................................................................................................... 3

A RIGHT OF PUBLICITY CHALLENGE TO A COPYRIGHT OWNER'S USE OF ITS COPYRIGHTED FOOTAGE CONTAINING AN ATHLETIC PERFORMANCE IS PREEMPTED BY THE COPYRIGHT ACT ......................... 3

    A.   Standard for Copyright Act Preemption ..................................................... 3

    B.   Recordings of Games, Including Broadcasts, Are Copyrightable and Thus Plainly Within the Subject Matter of Copyright ....................... 5

    C.   Plaintiffs-Appellants' Right of Publicity Claims Are Equivalent to Rights Under the Copyright Act and Preempted by the Act .................... 6

CONCLUSION ..................................................................................................... 11

ADDENDUM

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Baltimore Orioles, Inc. v. Major League Baseball Players Association*,
 805 F.2d 663 (7th Cir. 1986) ................................................................. 5, 6, 7, 8, 9

*Dryer v. National Football League*,
 No. 09-2182, 2014 WL 5106738 (D. Minn. Oct. 10, 2014) ................................. 5

*Fleet v. CBS, Inc.*,
 58 Cal. Rptr. 2d 645 (Cal. Ct. App. 1996) ........................................................ 6, 7

*Laws v. Sony Music Entertainment, Inc.*,
 448 F.3d 1134 (9th Cir. 2006) ............................................................................ 10

*Maloney v. T3Media, Inc.*,
 No. 14-05048 (C.D. Cal. Mar. 6, 2015) ...................................................... 7, 9, 10

*National Basketball Ass'n v. Motorola Inc.*,
 105 F.3d 841 (2d Cir. 1997) .................................................................................. 5

*National Car Rental System, Inc. v. Computer Associates International, Inc.*,
 991 F.2d 426 (8th Cir. 1993) ................................................................................. 4

*National Football League v. PrimeTime24 Joint Venture*,
 211 F.3d. 10 (2d Cir. 2000) ................................................................................... 5

*Ray v. ESPN, Inc.*,
 No. 13-1179, 2014 WL 2766187 (W.D. Mo. Apr. 8, 2014) ...................... 6, 7, 8, 9

*Somerson v. McMahon*,
 956 F. Supp. 2d 1345 (N.D. Ga. 2012) ..................................................... 6, 8, 9, 10

*Ventura v. Titan Sports, Inc.*,
 65 F.3d 725 (8th Cir. 1995) .................................................................................. 9

**STATUTES**

17 U.S.C. § 102(a) ....................................................................................................... 4

17 U.S.C. § 102(a)(6) .................................................................................................. 4

17 U.S.C. § 103 ............................................................................................................ 4

17 U.S.C. § 106 ............................................................................................................ 3

17 U.S.C. § 301(a) ....................................................................................................... 3

Appellate Case: 14-3428     Page: 4     Date Filed: 03/18/2015 Entry ID: 4255978

**OTHER AUTHORITIES**

H.R. No. 94-1476 (1976), *reprinted in* 1976 U.S.C.C.A.N..........................................5

1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1] (2014)..................................................................................................................7

# IDENTITY AND INTERESTS OF AMICI CURIAE[1]

Amicus Major League Baseball Properties, Inc. is the licensing agent for the Office of the Commissioner of Major League Baseball and the thirty member clubs of Major League Baseball, a professional baseball league operating in the United States and Canada. Amicus National Hockey League operates a professional hockey league in the United States and Canada.

Amici and their member clubs hold the copyrights to, and have provided the public with, hundreds of thousands of hours of extremely popular sports programming, including footage of Amici's baseball and hockey games recorded by Amici and their broadcast partners. These recordings primarily take the form of copyrightable motion pictures and other audiovisual works. As owners of copyrights in recordings of historical games, Amici have a strong interest in the continued ability to exercise their exclusive rights under the Copyright Act to perform and disseminate such recordings.

In granting Appellee's motion for summary judgment, the district court properly recognized that Plaintiffs-Appellants' state law right of publicity claims purportedly arising from the use of contemporaneous recordings of historical

---

[1] No party's counsel authored this brief in whole or in part. No party or party's counsel made a monetary contribution intended to fund the preparation or submission of this brief, and no person other than Amici or their counsel made such a monetary contribution. All parties have consented to the filing of this brief.

sporting events were preempted by the Copyright Act. That court correctly concluded that recordings of Plaintiffs-Appellants' athletic performances fell within the subject matter of copyright and that their right of publicity claims, which were based solely on the Appellee's use of those recordings, sought to vindicate rights equivalent to those Appellee holds in its copyrights.

Amici have an interest in the affirmance of the district court's ruling. The result urged by Plaintiffs-Appellants threatens owners of copyrighted content as it would limit their ability to exercise their exclusive rights to historical sports footage.

2

# ARGUMENT

## A RIGHT OF PUBLICITY CHALLENGE TO A COPYRIGHT OWNER'S USE OF ITS COPYRIGHTED FOOTAGE CONTAINING AN ATHLETIC PERFORMANCE IS PREEMPTED BY THE COPYRIGHT ACT

### A. Standard for Copyright Act Preemption

In passing the Copyright Act, Congress took steps to ensure that no state law could interfere with the exclusive rights provided by the Copyright Act. Specifically, the Copyright Act makes clear that the Act exclusively governs:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103.

17 U.S.C. § 301(a). As reflected in Section 106 of the Copyright Act, a copyright owner's exclusive rights include, *inter alia*, the right to "reproduce the copyrighted work in copies," "distribute copies . . . of the copyrighted work," "prepare derivative works based upon the copyrighted work," and "perform the copyrighted work publicly." *Id.* § 106.

Sections 102 and 103 set forth the types of works that come within the Copyright Act's exclusive jurisdiction. Section 102 grants copyright protection to

> original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.

3

*Id.* § 102(a). These protections expressly apply to "motion pictures and other audiovisual works." *Id.* § 102(a)(6). In addition, Section 103 extends protection to derivative works that the copyright owner makes of its copyrighted materials. *Id.* § 103.

In interpreting the preemption provision of Section 301 of the Act, this Circuit held that a state law cause of action is preempted by the Copyright Act if: "(1) the work at issue is within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act, and (2) the state law-created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106." *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993).

As shown below—and as the district court properly held—right of publicity challenges to a copyright owner's use of recordings of athletic events easily satisfy both prongs of this Circuit's preemption test: (1) recordings of sporting events and athletic performances, including recorded broadcasts, are copyrightable subject matter; and (2) the right of publicity claims asserted against the mere use of recordings of athletic events (including from broadcasts) are equivalent to the exclusive rights set forth in Section 106 of the Copyright Act. Accordingly, Plaintiffs-Appellants' right of publicity claims—which arise out of the use of

4

historical game footage in which they appeared and in which Appellee owns the copyrights—are precisely the type of state law claims that Section 301 preempts.

### B. Recordings of Games, Including Broadcasts, Are Copyrightable and Thus Plainly Within the Subject Matter of Copyright

In granting summary judgment to Appellee, the district court concluded that the first prong of the preemption test is met because video recordings of sporting events are copyrightable and thus plainly within the subject matter of copyright. *Dryer v. Nat'l Football League*, No. 09-2182, 2014 WL 5106738, at *16 (D. Minn. Oct. 10, 2014). That conclusion is amply supported both by the legislative history of the Copyright Act, as well as a legion of cases holding that recordings of broadcasts are copyrightable subject matter.

As part of the 1976 amendments to the Copyright Act, Congress made clear that recordings of live sporting events (including recorded broadcasts) are copyrightable. *See* H.R. No. 94-1476, at 52-53 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 5665-66. Indeed, numerous courts have concluded that recordings of sporting events are copyrightable. *See, e.g.*, *Nat'l Football League v. PrimeTime24 Joint Venture*, 211 F.3d. 10, 11-12 (2d Cir. 2000) (noting NFL's ownership of copyrights in NFL broadcasts); *Balt. Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 668-69 (7th Cir. 1986) (finding recorded baseball telecasts are copyrightable works); *Nat'l Basketball Ass'n v. Motorola Inc.*, 105 F.3d 841, 847 (2d Cir. 1997) (finding recorded broadcasts of basketball

5

games entitled to copyright protection); *Ray v. ESPN, Inc.*, No. 13-1179, 2014 WL 2766187, at *5 (W.D. Mo. Apr. 8, 2014) (finding recordings of wrestling matches are copyrightable material); *Somerson v. McMahon*, 956 F. Supp. 2d 1345, 1353 (N.D. Ga. 2012) (same). Courts have likewise held that the copyright in recordings of sporting events includes and extends to any athletic performance fixed within that recording. *See Balt. Orioles*, 805 F.2d at 677 n.26 ("Because a performance is fixed in tangible form when it is recorded, a right of publicity in a performance that has been reduced to tangible form is subject to preemption."); *Ray*, 2014 WL 2766187, at *5 (wrestling performances captured in recordings were part of the copyrighted material in those recordings); *Somerson*, 956 F. Supp. 2d at 1354 ("[I]t is the video recordings of plaintiff's wrestling performance that meet the subject matter requirement."); *see also Fleet v. CBS, Inc.*, 58 Cal. Rptr. 2d 645, 650 (Cal. Ct. App. 1996) (recognizing that once artistic performances were fixed in a tangible medium of expression, "the performances came within the scope or subject matter of copyright law protection").

    **C.  Plaintiffs-Appellants' Right of Publicity Claims Are Equivalent to Rights Under the Copyright Act and Preempted by the Act**

Because recordings of sporting events plainly fit within the subject matter of the Copyright Act, a right of publicity claim challenging the use of those recordings is preempted if the claim asserts rights equivalent to any exclusive right provided under copyright law. *See Balt. Orioles*, 805 F.2d at 675. That is

6

certainly the case where, as here, an athlete invokes the right of publicity to prevent a copyright owner from exercising its rights in the recording that have been expressly granted under Section 106 of the Copyright Act.

A right is equivalent to rights within the exclusive province of copyright law "when it is infringed by the mere act of reproducing, performing, distributing, or displaying the work at issue." *Fleet*, 58 Cal. Rptr. 2d at 653; 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1] (2014). Thus, any claim challenging the mere reproduction, performance, distribution, or display of a *performance captured in a copyrighted work* "is subsumed by copyright law and preempted." *Fleet*, 58 Cal. Rptr. 2d at 652-53 (recognizing "the obvious conclusion that a party who does not hold the copyright in a performance captured on film cannot prevent the one who does from exploiting it by resort to state law"); *see also Ray*, 2014 WL 2766187, at *5 (quoting same); *Maloney v. T3Media, Inc.*, No. 14-05048, Dkt. 77, at 11 (C.D. Cal. Mar. 6, 2015) (unpublished).

As shown above, it is beyond dispute that the performance of an athlete contained within a recording of a sporting event is necessarily "part of the copyrighted material, and his likenesses could not be detached from the copyrighted performances that were contained in" the recording. *Ray*, 2014 WL 2766187, at *5; *see also Balt. Orioles*, 805 F.2d at 677-78 & n.26 (recognizing that, once baseball players' performances are "fixed in tangible form" by

7

recordings of telecasts, the performances are subsumed within the copyrighted subject matter). And it is equally without question that Section 106 of the Copyright Act grants copyright owners the exclusive right to reproduce, perform, distribute, display, and make derivative works of *all aspects* of the copyrighted work. *See Balt. Orioles*, 805 F.2d at 678 ("[F]ederal copyright law extends to the authors of [copyrighted] works a limited monopoly to reap the rewards of their endeavors.").

Thus, in the case of a recording of sports events, Section 106 necessarily grants the owner of the copyright in such recording the exclusive right to reproduce, perform, distribute, display, and make derivative works from, any and all portions of that work—including those portions that contain an athlete's performance and/or name and likeness. *See, e.g.*, *Somerson*, 956 F. Supp. 2d at 1353-55 (copyright owner's rights included preparing and distributing compilation that incorporated portions of previously copyrighted recordings of wrestling matches); *Ray*, 2014 WL 2766187, at *3 (recognizing right to reproduce recordings of telecasts of wrestling events).

Because Plaintiffs-Appellants' right of publicity claims do no more than challenge Appellee's exercise of its Section 106 exclusive rights in recordings of NFL football games, the rights they assert are equivalent to those rights provided to Appellee under—and thus are preempted by—the Copyright Act. Courts faced

8

with nearly identical challenges to the use of copyrighted footage of athletic performances have reached this same conclusion. *See, e.g.*, *Balt. Orioles*, 805 F.2d at 674 ("[T]he Clubs' copyright in the telecasts of [M]ajor [L]eague [B]aseball games preempts the Players' rights of publicity in their game-time performances."); *Ray*, 2014 WL 2766187, at *5 (preempting right of publicity claim "based solely on ESPN airing video recordings depicting [plaintiff] in a 'work of authorship,' which is plainly encompassed by copyright law"); *Somerson*, 956 F. Supp. 2d at 1355 (finding preempted a right of publicity claim based on the Worldwide Wrestling Entertainment Inc.'s "reproducing the video recordings depicting [plaintiff], preparing derivative works based on the video recordings of him, and distributing copies of these video recordings to the public"); *cf. Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 730 n.6 (8th Cir. 1995) (suggesting wrestler's right of publicity claims arising out of videotapes containing portions of prior broadcasts were preempted by Copyright Act); *Maloney*, No. 14-05048, Dkt. 77, at 11 (preempting right of publicity challenge to photographs of athletes where "Plaintiffs have not identified a use of their names or likenesses independent of the display, reproduction, and distribution of the copyrighted images in which they are depicted").

Indeed, a contrary holding would undermine the very exclusive rights that the Copyright Act grants to copyright owners. Absent preemption, the "right of

9

publicity could easily supplant the copyright scheme," with the result that "virtually every use of a copyrighted . . . recording would infringe upon the original performer's right of publicity." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1145 (9th Cir. 2006). This untenable result led the Ninth Circuit to conclude correctly that "[i]t is hard to imagine how a copyright would remain meaningful if its licensees were potentially subject to suit from any performer anytime the copyrighted material was used." *Id.* Similarly, the Central District of California recognized just this month that allowing right of publicity claims to proceed in this scenario could "destroy copyright holders' ability to exercise their exclusive rights under the Copyright Act," effectively giving the individuals captured in a copyrighted work "veto power" over the copyright owner's rights under the Copyright Act and "destroying the *exclusivity* of rights the Copyright Act claims to protect." *Maloney*, No. 14-05048, Dkt. 77, at 9. In holding that Plaintiffs-Appellants' right of publicity claims are preempted by the Copyright Act, the district court in this case properly prevented that outcome, and this Court should affirm the district court's ruling.

## CONCLUSION

For the foregoing reasons, the district court's ruling that Plaintiffs-Appellants' right of publicity claims are preempted by the Copyright Act should be affirmed.

Respectfully submitted,

 /s/ Anthony J. Dreyer
Anthony J. Dreyer
Jordan A. Feirman (of counsel)
Andrew L. Green (of counsel)
SKADDEN ARPS SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel.: (212) 735-3000
Fax: (917) 777-3000

Dated: March 17, 2015

11

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 2,199 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6), respectively, because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

    /s/ Anthony J. Dreyer
    Anthony J. Dreyer

# CERTIFICATE OF SCANNED AND VIRUS-FREE BRIEF

The undersigned hereby certifies, pursuant to Eighth Circuit Rules of Appellate Procedure 28A(h)(2), that this Brief has been scanned for viruses and it is virus-free.

Dated: New York, New York
March 17, 2015

                                               s/ Anthony J. Dreyer
                                                  Anthony J. Dreyer

# CERTIFICATE OF SERVICE

I certify that on March 17, 2015, I caused the foregoing Brief of *Amici Curiae* Major League Baseball Properties, Inc. and National Hockey League in Support of Defendant-Appellee with the Clerk of Court to be electronically filed via the Court's CM/ECF System; all of the parties listed on the attorney service preference report have been served via the Court's CM/ECF system.

Upon acceptance by the Court of the e-filed document, ten paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

    /s/ Anthony J. Dreyer
Anthony J. Dreyer